1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DEANNA KNAPP

Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

Defendant.

No. 1:15-cv-3011-FVS

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 12, 13.) Attorney Cory J. Brandt represents plaintiff; Special Assistant United States Attorney Leisa A. Wolf represents defendant. After reviewing the administrative record and briefs filed by the parties, the court GRANTS plaintiff's Motion for Summary Judgment and DENIES defendant's Motion for Summary Judgment.

## JURISDICTION

Plaintiff Deanna Knapp (plaintiff) protectively filed for disability insurance benefits (DIB) on December 5, 2011. (Tr. 18, 43.) Plaintiff alleged an onset date of January 20, 2010. (Tr. 43, 162.) Benefits were denied initially and on reconsideration. (Tr. 97, 103.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Laura Valente on May 15, 2013. (Tr. 42-74.) Plaintiff was represented by counsel and testified at the hearing. (Tr. 44-70.) Vocational expert Kimberly Mullinax also testified. (Tr. 71-73.) The ALJ denied benefits (Tr. 18-33) and the Appeals Council denied review. (Tr. 1.) The matter is now before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcripts, the ALJ's decision, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was born March 2, 1965 and was 48 years old at the time of the hearing. (Tr. 162.) She has work experience as an accountant. (Tr. 53.) She has had two spinal fusions, one in May

2010 and the second in November 2011. (Tr. 44.) Between her spinal fusion surgeries, she took a hard fall which caused complications. (Tr. 45-49.) At the time of the hearing, her symptoms included numbness below the waist, including both thighs and down her left leg, and pain from just above the fusion going below her waist and into her calves and feet. (Tr. 60.) She described the feeling from her lower ribcage down as a constant, gnawing, deep, icky pain. (Tr. 60.) She has bowel and bladder problems due to the numbness below her waist. (Tr. 63-64.) She spends most of the day lying on the couch. (Tr. 48, 65.) She does not have any energy. (Tr. 66.) She testified she used to be able to figure out complicated tax problems for work and now she cannot balance her checkbook. (Tr. 66.) She cannot concentrate and gets confused. (Tr. 67.) She feels like she is no longer smart. (Tr. 67.) She cannot remember things like she used to. (Tr. 69.) She sees a counselor for depression. (Tr. 67.) She has unrelenting pain "24/7." (Tr. 69.)

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not

substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Serv.*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 3

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984). If the Commissioner does not meet that burden, the claimant is found to be disabled. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**ALJ'S FINDINGS**

At step one of the sequential evaluation process, the ALJ found plaintiff engaged in substantial gainful activity from the alleged onset date through June 15, 2012. (Tr. 20.) However, plaintiff has not engaged in substantial gainful activity since June 15, 2012. (Tr. 21.) At step two, the ALJ found plaintiff has severe impairments of degenerative disc disease of the cervical and lumbar spine. (Tr. 21.) At step three, the ALJ found plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 22.) The ALJ then determined:

> [C]laimant has the physical residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that she can lift ten pounds occasionally and less than ten pound frequently. She can stand or walk for two hours in an eight-hour workday. She can sit for six hours in an eight-hour workday. She can frequently push and pull with her bilateral lower extremities. She can occasionally climb ramps and stairs, stoop and crouch. She can never climb ladders, ropes or

scaffolds. She can frequently kneel and crawl. She must avoid concentrated exposure to extreme cold, vibrations and hazards.

(Tr. 22.) At step four, the ALJ found plaintiff is able to perform past relevant work. (Tr. 31.) Alternatively, the ALJ found there are other jobs existing in the national economy that plaintiff can perform. (Tr. 31.) Thus, the ALJ concluded plaintiff has not been under a disability as defined in the Social Security Act from January 20, 2010, through the date of the decision. (Tr. 32.)

## ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts the ALJ erred by: (1) improperly rejecting opinions of plaintiff's treating and examining medical providers; and (2) improperly rejecting plaintiff's subjective complaints. (ECF No. 12 at 12-20.) Defendant argues: (1) substantial evidence supports the credibility finding; and (2) the ALJ reasonably evaluated the medical evidence. (ECF No. 13 at 4-21.)

## DISCUSSION

**1.    Credibility**

Plaintiff argues the ALJ failed to provide valid reasons for rejecting plaintiff's subjective complaints. (ECF No. 12 at 16-20.) In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929.

Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). If there is evidence of a medically determinable impairment likely to cause an alleged symptom and there is no evidence of malingering, the ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. *Id.* at 346. The ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The following factors may also be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living

activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 595, 601-02 (9th Cir. 1999). A negative credibility finding must be supported by "specific, clear and convincing" reasons when there is no evidence of malingering.[1] *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).

In this case, the ALJ found plaintiff's claims are not fully credible and cannot be relied upon to determine the extent of her limitations. (Tr. 24.) The ALJ found plaintiff's allegations not credible for a number of reasons. (Tr. 27-28.)

First, the ALJ found inconsistencies between plaintiff's testimony and evidence about plaintiff's activities in the record. (Tr. 27.) A strong indicator of credibility is the consistency of the individual's own statements with other information in the case record. S.S.R. 96-7p. Additionally, it is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in making the credibility determination. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ pointed out plaintiff testified she spends all day lying on the couch. (Tr. 27, 48-49, 65.) The ALJ found a note that plaintiff tripped and injured her ankle while working on her lawn in October 2010 inconsistent with plaintiff's need to lie down. (Tr. 27, 293.) The ALJ also pointed out that plaintiff said she did not have much feeling in her legs but in

---

[1] Defendant asserts "clear and convincing reasons" are not required for a legally sufficient credibility finding. (ECF No. 13 at 5-6.) However, a long line of cases is established law which sets forth "clear and convincing reasons" as the requisite basis for a negative credibility finding. *E.g.*, *Carmickle v. Comm'r*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001); *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *Morgan v. Comm'r*, 169 F.3d 595, 599 (9th Cir. 1999); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Swenson v. Sullivani*, 876 F.2d 683, 687 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984).

October 2010 she was walking on her left foot without much difficulty and Dr. Varnavas observed her walking around in a store. (Tr. 27, 293.) Similarly, the ALJ points to a 2010 office visit note that described plaintiff as an active person that likes to fish and camping, and noted that she was camping one month after her first surgery. (Tr. 27, 300, 313.) Plaintiff testified that between her first and second fusion, she was able to take her zero gravity recliner fishing and lay down in a camper as needed while camping. (Tr. 57-58.) She also testified that "I have lost what little I could [d]o before the second fusion and now cannot even go out and do any of that stuff that, I'm more immobile now." (Tr. 58.) This is confirmed by information in her husband's function report which states they have not gone fishing or camping in their RV since her back surgery. (Tr. 223.) She also testified that between the first and second fusion she had one month that she felt good before she fell and disrupted the first fusion, and that her pain became worse after the second fusion. (Tr. 55.) The ALJ's focus on activities between the two spinal fusions misses a significant point of plaintiff's allegations: that her pain increased and has not improved since the second spinal fusion. Furthermore, according to the ALJ's findings, plaintiff was engaged in substantial gainful activity until June 2012, anyway, making her ineligible for benefits and limiting the relevance of activities during this period.

The ALJ also found it significant to the credibility finding that in October 2011, plaintiff reported she "stays as active as she can." (Tr. 27, 306.) However, this statement does not support the ALJ's assertion that plaintiff is more active than alleged when read in context: "Her exercise is limited – painful to stand and sit. Lying down provides some pain relief. She took off the summer and was able to limit her activities as needed for pain management. She states [she] is unable to exercise but stays as active as she can." (Tr. 306.) This does not indicate plaintiff was more active than alleged. Similarly, the ALJ found plaintiff's use of a treadmill inconsistent with her testimony. (Tr. 27, 705, 712.) However, in December 2012 plaintiff told ARNP Roehl she walks on her treadmill to help with her left leg weakness. (Tr. 693.) She told ARNP Downey that she lies on the sofa for the majority of the day, but she walks around every 15-20 minutes and then lies down again. (Tr. 684-85.) It was recommended that she "be up walking around" to prevent other problems from developing. (Tr. 686.) This is consistent with testimony indicating she does small jobs around the house for 15 or 20 minutes at a time, then lies down on the couch. (Tr. 55.) It is inappropriate to penalize plaintiff and question her credibility because she attempts to engage in activities which are recommended or which help her condition. The ALJ cited no evidence that

plaintiff is walking or active to a degree inconsistent with her testimony or other evidence in the record.

The ALJ noted that plaintiff reported her pain comes and goes (Tr. 699), yet testified she is in constant pain. (Tr. 27, 55.) She told her counselor in April 2013 that she cannot get a routine, that she cannot schedule her pain, and that her pain comes and goes. (Tr. 699.) However, plaintiff also told her physical therapist that she was in constant pain in January 2012. (Tr. 425, 433) and testified that she is in constant pain "24/7." (Tr. 69.) This is not a significant inconsistency in the record justifying a negative credibility finding.

The ALJ pointed to the fact that plaintiff attended her son's baseball game as evidence that plaintiff is engaging in activities inconsistent with her allegations (Tr. 27.) A therapist note from May 2013 mentions in passing that plaintiff attended her son's baseball game. (Tr. 697.) She testified she goes to her son's baseball games "but we have bought me one of the expensive zero gravity recliners so my husband can take it and I can lay in the recliner." (Tr. 57.) This is a reasonable explanation for what might appear to be participation in an activity inconsistent with plaintiff's reported problems with sitting and standing. Without any supporting evidence, the ALJ suggests the explanation is not plausible and asserts that going to a sporting event "is inherently at odds with the very severe limitations she attempts to present, particularly her claim that she has to lay down all day." (Tr. 27.) It is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). Plaintiff explained a reasonable accommodation which makes it possible for her to attend a baseball game in a manner consistent with her impairment. The ALJ's conclusion to the contrary is not based on substantial evidence.

Another reason cited in support of the negative credibility finding involves information about child care the ALJ determined conflicted with plaintiff's testimony. (Tr. 27.) According to the ALJ, plaintiff testified that she did not provide care for her youngest child, but her husband's function report indicated plaintiff was responsible for getting her son ready for school, helping with his homework, and preparing his dinner. (Tr. 27.) Plaintiff testified that when she had her first fusion, her six-year old son was cared for by her husband and her middle child. (Tr. 61.) She said, "He took a couple of days off and then my middle child was there to take care of the younger one." (Tr. 61.) The context shows that plaintiff's response referred to the time of the surgery and her husband was able to take a few days off to take care of the children. (Tr. 61.) When asked who

cared for the children when they were home, she testified, "Well basically they all fend for themselves . . . my husband would [prepare] things and they could eat and my husband would take care of them. He usually gets home before the bus does so he would be home to receive my son on the bus and the 17-year old was basically self-sufficient." (Tr. 62.) Again, based on the context, it appears plaintiff was referencing the time around the surgery, when her youngest son was age six. Her husband's statement was completed in 2012 and her son was age nine at the time. (Tr. 220.) Furthermore, although her husband stated plaintiff helps her son get ready for school in the morning and cooks dinner for him (2 years after the surgeries), he bookended those comments with, "My wife has to lay down a lot on the couch or in bed," and, "during the day she lays down." This is consistent with her testimony that she gets up for 15-20 minutes at time to do small tasks. Furthermore, a nine-year old does not typically require a lot of physical care. A claimant need not be utterly incapacitated in order to be eligible for benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Many activities are not easily transferable to what may be the more grueling environment of the workplace, where it might not be possible to rest or take medication. *Id.* There is no significant inconsistency between plaintiff's testimony about lying in bed and her husband's statement about caring for their son. The ALJ's conclusion is not supported by substantial evidence and is not a reasonable interpretation of the evidence.

Other evidence cited by the ALJ in support of the credibility finding involves plaintiff's testimony about smoking. (Tr. 27.) The ALJ asserts plaintiff "testified that her smoking was not an issue and that her doctor did not go over the effects of smoking on healing with her in his office." (Tr. 27.) According to the ALJ, the record contradicts plaintiff's testimony because the doctor explained specific details about the negative impact of smoking on healing. (Tr. 28, 349.) However, plaintiff was asked at the hearing, "Was the smoking an issue? Did any surgeon decline to perform the surgery because of the smoking?" (Tr. 52.) She responded, "No." (Tr. 52.) This is accurate since there is no evidence any surgeon declined to perform surgery due to smoking. The ALJ also found it significant that plaintiff testified that Dr. Varnavas did not discuss the effect of continued smoking on the healing process, but Dr. Varnavas' November 2011 record indicate he stressed the effects of smoking on recovery. (Tr. 28, 53, 349.) However, this is a non-issue since Dr. Varnavas' notes about smoking were made before the second surgery, plaintiff stopped smoking before that surgery, and did not restart smoking after surgery. (Tr. 52-53.) It is unclear how complying with a recommendation to stop smoking casts doubt on plaintiff's credibility.

Another reason cited by the ALJ to justify the credibility finding is that plaintiff failed to follow recommended treatment. (Tr. 28.) It is well-established that unexplained non-compliance with treatment reflects on a claimant's credibility. *See Molina v. Astrue*, 674 F.3d 1104, 1113 - 1114 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir.1996); *Fair v. Bowen*, 885 F.2d 597, 603 -604 (9th Cir. 1989). The ALJ pointed out that Ms. Downey recommended seeing a physiatrist and pain anesthesiologist but plaintiff had not done so "months later." (Tr. 28.) The ALJ also observed "no reason for the delay was provided." (Tr. 28.) In April 2013, Ms. Downey wrote, "We set her up to see a physiatrist in our Spine Clinic to help set up a treatment program for her and then her primary care physician could do the follow up. We also set her up with our pain anesthesiologist for perhaps a dorsal nerve root stimulator to help decrease her radicular symptoms as well." (Tr. 686.) At the hearing in May 2013, one month later, the ALJ asked plaintiff about those appointments: "[O]ne of the providers here, Downey[,] recommended very recently that you see a [physiatrist] at the spine clinic. Have you done that?" (Tr. 63.) Plaintiff testified, "No, my appointment is in June." (Tr. 63.) The ALJ also asked about an appointment with the anesthesiologist and plaintiff testified, "Not yet. I'll find out who they'll recommend here in Yakima [at] my appointment June 14th." (Tr. 63.) The ALJ's conclusion that plaintiff is not compliant with treatment recommendations is unsupported by the record. It is neither unusual nor incredible that an appointment with a specialist might take more than a month to schedule. Furthermore, the ALJ's characterization of the period between the recommendation and plaintiff's testimony as "months" is factually inaccurate and, indeed, the ALJ herself stated the appointment with Ms. Downey was very recent. In addition, the ALJ's comment that "no reason for the delay was provided" is not reasonable given the amount of time between the recommendation and appointment. Substantial evidence does not support the ALJ's finding.

Another reason mentioned by the ALJ in finding plaintiff less than fully credible is that plaintiff alleged bowel and bladder control problems, but testified that she uses only a panty liner for protection. (Tr. 28.) According to the ALJ, "Given the minimal absorption depth of the average panty liner, her leakage must be benign. If her bowel and bladder symptoms were extreme it is more likely she would be using an adult diaper. Her assertion at the hearing of use of a panty liner seemed a sudden pretext, when she was asked to explain how she contains her alleged incontinence." (Tr. 28.) First of all, plaintiff did not testify or complain of "extreme" bowel and

bladder symptoms. Plaintiff testified that she began to have numbness below the waist after her first surgery. (Tr. 63-64.) She testified that she cannot empty her bladder and leaks if she moves wrong or coughs. (Tr. 64.) Plaintiff testified that her bowel problem is constipation and that she does not have problem with leaking from her bowels, "but I do leak and wear pads so that I don't wet myself." (Tr. 64.) Thus, plaintiff's testimony is consistent with the use of light protection rather than regular incontinence products. Secondly, "it seems like pretext" is not a reasonable basis for a negative credibility determination. This is not a clear and convincing reason supported by substantial evidence.

Lastly, the ALJ cited plaintiff's work during the period from January 2010 until June 2012 as a reason for the negative credibility finding. (Tr. 28.) The ALJ noted that plaintiff testified she did not work as many hours as she was paid for. (Tr. 28.) The ALJ concluded that plaintiff either misrepresented her work to her employer or was paid for work she did not do. (Tr. 28.) Accordingly, the ALJ found her employment testimony casts doubt on her credibility. (Tr. 28.) Plaintiff testified that after her first spinal fusion surgery in July 2010, she made mistakes at work due to problems concentrating. (Tr. 49-51.) She testified that she had worked with her boss for 15 years and was the only person doing her job. (Tr. 51.) She testified he continued to employ her until June 2012 out of pity or loyalty because her work performance suffered. (Tr. 51.) She testified that after January 2010, she worked "minimal hours" which was between four and six hours a day. (Tr. 56.) She said, "Sometimes I was so highly medicated I could not honestly tell you exactly how many hours I actually worked. He had me on the clock for times I know I was laying there not working." (Tr. 56.) Her employer signed a statement in January 2012 stating that plaintiff was working at 35-40% of typical productivity. (Tr. 197.) He also indicated he was playing plaintiff more than he would another employee in the same position. (Tr. 197.)

Plaintiff's testimony and her employer's statement are consistent, yet the ALJ found, "It is most plausible that her work was satisfactory and that her employer was reaping gain from the claimant's work and that her employer is now, out of loyalty for being a good employee, understandably making efforts to support her claim for disability." (Tr. 21.) As a result, the ALJ did not accept as credible plaintiff's claim that she worked but her work was not satisfactory due to disability. (Tr. 21.) Therefore, the ALJ found plaintiff was engaged in substantial gainful activity from the alleged onset date until June 2012 and was not entitled to disability during this time. (Tr. 21.)

The problem with the ALJ's credibility finding regarding plaintiff's work is that it is inconsistent. On one hand, the ALJ characterized plaintiff's testimony as indicating she misrepresented to her hours to her employer or accepted payment for work she did not do. (Tr. 28.) On the other hand, the ALJ speculated plaintiff "was a good employee," her work was "satisfactory," her employer "was reaping gain from the claimant's work" during the period of substantial gainful activity, and he only supported her claims out of loyalty. (Tr. 21.) This inconsistency in interpreting the evidence suggests the ALJ's findings are not based on substantial evidence but on inference and speculation. Even if some of this evidence might reasonably support one or more of the ALJ's conclusions, plaintiff's disability claim is reduced by the period of substantial gainful activity after her alleged onset date. As a result, this reasoning is not a clear and convincing basis for the credibility finding.

The ALJ failed to make a credibility finding based on specific, clear and convincing reasons supported by substantial evidence. On remand, the credibility finding must be revisited and the ALJ must provide appropriate reasoning with supporting citations to the record for any negative determination.

**2.    Opinion Evidence**

Plaintiff argues the ALJ improperly rejected the opinions of plaintiff's treating and examining medical providers. (ECF No. 12 at 12-16.) In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

If a treating or examining physician's opinions are not contradicted, they can be rejected

only with clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9ᵗʰ Cir. 1996). However, if contradicted, the ALJ may reject the opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9ᵗʰ Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9ᵗʰ Cir. 1989); *Fair v. Bowen*, 885 F.2d 597, 605 (9ᵗʰ Cir. 1989).

Similarly, the opinion of an acceptable medical source is given more weight than that of an "other source." 20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9ᵗʰ Cir. 1996). "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9ᵗʰ Cir. 1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9ᵗʰ Cir. 1996). Pursuant to *Dodrill v. Shalala*, 12 F.3d 915 (9ᵗʰ Cir. 1993), an ALJ is obligated to give reasons germane to "other source" testimony before discounting it.

### a.    Dr. Kuhns

Plaintiff argues the ALJ did not give proper weight to the opinion of Dr. Kuhns. (ECF No. 12 at 13-14.) In July 2012, Dr. Kuhns completed a medical report form. (Tr. 515-16.) He opined plaintiff needs to lie down during the day and she "can't stand or sit or work at all" and "has to change positions often." (Tr. 515.) He also wrote that plaintiff cannot work because of pain. (Tr. 516.) The ALJ assigned minimal weight to Dr. Kuhns' opinion. (Tr. 29.)

The ALJ first gave limited weight to the opinion because Dr. Kuhns had a limited treatment record with plaintiff. (Tr. 29.) This is not an appropriate reason for giving less weight to an opinion. Even if Dr. Kuhns had only seen plaintiff one time, his opinion would be entitled to consideration as an examining physician. *See* 20 C.F.R. § 404.1527; *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir.1995). The ALJ noted, "It appears that he had only seen her twice." (Tr. 29.) Plaintiff argues the ALJ also erred factually and asserts Dr. Kuhns saw plaintiff a number of times. (ECF No. 12 at 14.) Presumably, the ALJ meant Dr. Kuhns had only seen plaintiff twice before the July 2012 opinion. The record contains office visit notes from Dr. Kuhns for April 2010 and November 2011

before the July 2012 visit.[2] (Tr. 274, 287, 515.) Notwithstanding, while the length and relationship with a physician may be considered in evaluating and weighing an opinion, it is not proper basis for rejecting an opinion. *See* 20 C.F.R. § 404.1527(c). Furthermore, Dr. Kuhns noted he had been treating plaintiff since 2003, although the record does not include evidence before April 2010 from Dr. Kuhns. (Tr. 515.) Thus, the ALJ erred by citing this reason for rejecting Dr. Kuhns' opinion.

The ALJ also gave less weight to Dr. Kuhns' opinion because the ALJ determined the opinion is conclusory. (Tr. 29.) An ALJ may discredit a physician's opinion that is conclusory, brief, and unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The ALJ pointed out Dr. Kuhns opined plaintiff needs to elevate her legs and cannot work, but did not say why except because of pain. (Tr. 29.) The ALJ asserted Dr. Kuhns did not offer objective evidence to support the degree of limitation. (Tr. 29.) Dr. Kuhns opined plaintiff could not work because of pain (Tr. 516) and she is unable to work because of falling and pain. (Tr. 746.) The ALJ pointed out Dr. Kuhns did not observe plaintiff fall and "does not indicate how he is gauging the degree of her pain." (Tr. 29.)

Plaintiff points out that Dr. Kuhns noted his observations that plaintiff had difficulty during examinations due to pain, observed tenderness and soreness in the back, and observed her inability to sit and walk without shifting positions. (ECF No. 12 at 14, Tr. 274, 287, 515.) In April 2010, Dr. Kuhns noted, "It is very difficult for her to sit up during the exam," and, "The patient is having difficult time with this exam because position she gets into her back hurts with radicular pain down the leg. [sic]" (Tr. 274.) In November 2011, plaintiff saw Dr. Kuhns for a presurgical visit and he noted tenderness and soreness in back. (Tr. 287.) Indeed, the fact that surgery was imminent suggests plaintiff's symptoms were supported by medical findings. On the July 2012 medical report form, Dr. Kuhns noted plaintiff's history of two surgeries and treatment at the pain clinic. (Tr. 515.) Although there are not extensive findings in Dr. Kuhns notes, they are not "conclusory" findings with no basis in the exam. As a result, the ALJ's conclusion is not well-supported by the

---

[2] Plaintiff also cites a visit in December 2011 on page 560 of the transcript, but that is a record from Dr. Varnavas, not Dr. Kuhns. (ECF No. 12 at 14.) There are also office visit notes from Dr. Kuhn from October 2012, December 2012 and March 2013 in the record. (Tr. 735, 744, 746.) The March 2013 note indicates, "I have had her as a patient for many years." (Tr. 746.)

evidence.

Lastly, the ALJ determined Dr. Kuhns' opinion infringes on the ultimate issue of disability reserved for the Commissioner. (Tr. 29.) A medical source opinion that a claimant is "disabled" or "unable to work" is not a medical opinion and the ALJ is not required to determine that the claimant meets the statutory definition of disability. 20 CFR § 404.1527(d)(1). The determination of disability is an issue reserved to the Commissioner. S.S.R. 96-5p. To the extent Dr. Kuhn opined that plaintiff is not able to work, the ALJ correctly rejected the opinion. However, this is not a good reason for rejecting Dr. Kuhn's findings that plaintiff cannot stand or sit and has to change positions often. As a result, the ALJ did not properly reject Dr. Kuhns' opinion based on specific, legitimate reasons supported by substantial evidence.

Defendant argues the ALJ also gave additional reasons for rejecting Dr. Kuhn's findings, including that they are based on plaintiff's subjective complaints and are not supported by clinical evidence. (ECF No. 13 at 13-14.) However, these reasons were not cited by the ALJ in rejecting Dr. Kuhns' opinion and the court is constrained to review only those reasons asserted by the ALJ. *Sec. Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001). The ALJ's rejection of Dr. Kuhns' opinion is legally insufficient and therefore, the ALJ erred.

### b.    Dianna Kallis, ARNP

Plaintiff argues the ALJ improperly discounted the opinion of Dianna Kallis, ARNP. (ECF No. 12 at 14-15.) Ms. Kallis completed a medical report form in December 2012. (Tr. 519-20.) She noted diagnoses of disc herniation L4-5-S1 with radiculopathy in the left leg and degenerative disc disease. (Tr. 519.) Ms. Kallis noted symptoms of low back pain radiating down left leg, pelvic pain, and decreased sensation. (Tr. 519.) She opined that plaintiff needs to lie down during the day and must change position every 10-15 minutes. (Tr. 519.) She also opined that plaintiff would miss four or more days of work per month. (Tr. 520.) Ms. Kallis wrote that working on a regular and continuing basis would cause overuse and plaintiff would suffer from increased pain level and decreased productivity. (Tr. 520.) The ALJ gave minimal weight to Ms. Kallis' opinion. (Tr. 29-30.) As an "other medical source," Ms. Kallis' opinion may be rejected by the ALJ for reasons germane to the opinion.

The first reason cited by the ALJ in rejecting Ms. Kallis' opinion is the "limited treatment relationship." (Tr. 30.) The ALJ asserted plaintiff only had two visits with Ms. Kallis, one of which

was in 2007. (Tr. 30.) However, the record reflects seven visits between October 2010 and December 2012. (Tr. 296, 300, 303, 305, 508, 519-20, 731.) The ALJ's first reason for rejecting Ms. Kallis' opinion is factually inaccurate and is therefore based on error.

Second, the ALJ lists a number of reasons for rejecting the opinion which are tied to the ALJ's erroneous finding that plaintiff had only seen Ms. Kallis twice. (Tr. 30.) Without reviewing all of Ms. Kallis' records, the ALJ found Ms. Kallis' opinion conclusory, with no basis in the record, unsupported by examination evidence or personal evaluation. (Tr. 30.) According to the ALJ, Ms. Kallis had "no way of having personal knowledge" of plaintiff's need to change position. (Tr. 30.) The ALJ also rejected Ms. Kallis' opinion because it is based on plaintiff's self-report which was rejected by the ALJ. Because the ALJ overlooked a number of Ms. Kallis' records, these reasons are based on error.

Lastly, the ALJ asserted that "the handwriting on this opinion appears to be from two different people, which is concerning." (Tr. 30.) This reason for rejecting the opinion is improper for several reasons. First, the court does not agree the handwriting on the opinion is obviously from different sources. In fact, Ms. Kallis' handwriting is distinctively stylized and appears to the court to be consistent throughout. (Tr. 519-20.) The ALJ did not point to any particular line or statement in the opinion that stands out as different handwriting. Notwithstanding, even if there were obvious differences in the handwriting of the opinion, it is not clear what the ALJ is suggesting or what basis the ALJ has for concluding the written report does not represent Ms. Kallis' opinion. Presumably there are reasonable and non-nefarious reasons for different handwriting to appear on a medical report and there is no evidence that one of these reasons would not apply in this case. The ALJ's conclusion is speculative and without basis in the record.

The ALJ failed to give any reason germane to Ms. Kallis' opinion for rejecting her findings. Because the ALJ overlooked some of Ms. Kallis' records, remand is required.

### c.    Rick Morse, DC

Plaintiff argues the ALJ improperly rejected the opinion of Rick Morse, DC. (ECF No. 12 at 15.) In March 2011, Dr. Morse wrote a letter stating plaintiff had been a patient since 2000, had back surgery, and was now unable to work. (Tr. 446.) He opined that on a "more probable than not" basis she would be permanently disabled. (Tr. 46.) In October 2012, Dr. Morse completed a Medical Report form. (Tr. 517-18.) He indicated plaintiff must lie down during the day, would need more than two 15-minute breaks per day or could not work an eight-hour day, and that she

would miss more than four days of work per month due to her medical impairment. (Tr. 517-18.) The ALJ gave minimal weight to Dr. Morse's opinion. (Tr. 29.) As a chiropractor, Dr. Morse is not an acceptable medical source. Therefore, the ALJ was required to supply germane reasons for rejecting the opinion.

The ALJ rejected the March 2011 letter opinion by Dr. Morse because he did not provide any basis for the opinion that plaintiff cannot work or explain why she would be permanently disabled. (Tr. 29.) The ALJ also pointed out that Dr. Morse did not define what he meant by "on a more probable than not basis" and determined the statement was conclusory. (Tr. 29.) An ALJ may discredit medical opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Although there are some notes from treatment dated 2006 to 20011 in the record, they do not provide specific support for Dr. Morse's conclusion. Additionally, the ALJ noted Dr. Morse's opinion that plaintiff cannot work is an issue reserved to the Commissioner. (Tr. 29.) S.S.R. 96-5. The ALJ reasonably rejected the March 2011 opinion.

The ALJ also rejected the October 2012 opinion. (Tr. 29.) The ALJ indicated the opinion was conclusory and does not state why plaintiff needs to lay down or why she needs more breaks. (Tr. 29.) A medical opinion may be rejected if it is unsupported by medical findings. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001), *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992). The ALJ pointed out Dr. Morse did not conduct a physical capacities evaluation or otherwise provide reliable objective evidence to support his conclusions. (Tr. 29.) These reasons are reasonably germane to Dr. Morse's opinion.

The ALJ noted that Dr. Morse "is not a qualified provider to determine that she has permanent limitations." (Tr. 29.) The ALJ also determined there is no basis in Dr. Morse's records to support his opinion that plaintiff would miss four or more days of work per month. (Tr. 29.) This is a reasonable interpretation of the evidence. Plaintiff also argues her surgeries themselves provide support for Dr. Morse's conclusions. However, the fact of the surgeries alone does not reasonably provide adequate support for Dr. Morse's opinion as he is not qualified to recommend or perform surgery. The ALJ provided adequate reasons for rejecting Dr. Morse's opinions.

**d.    Gary Campbell, M.Ed., LMHC, LMFT**

Plaintiff argues the ALJ improperly assigned minimal weigh to the opinion of Gary Campbell, a therapist. (ECF No. 12 at 15-16.) In January 2013, Mr. Campbell completed a Mental Medical Source Statement. (Tr. 521-22.) He assessed two severe limitations and four marked limitations. (Tr. 521-22.) He opined that plaintiff's pain, inability to work, and poor prognosis caused severe depression. (Tr. 522.) He noted significant problems sustaining concentration and short-term memory problems. (Tr. 522.) In an April 2013 letter, Mr. Campbell indicating that plaintiff "suffers acute disabling pain daily." (Tr. 688-89.) He noted problems completing hygiene, grooming, daily living activities, and job tasks. (Tr. 688.) Mr. Campbell noted significant problems with concentration, short-term memory, and tracking and sequencing her behavior. (Tr. 688.) He identified plaintiff as a compliant patient who follows through and puts for her best effort to endure and manage her circumstances. (Tr. 689.) He opined, "Given her physical dysfunction, pain and mental status, I would consider her employability markedly impaired." (Tr. 689.) The ALJ must provide germane reasons for rejecting Mr. Campbell's opinions.

The ALJ gave minimal weight to the January 2013 opinion. (Tr. 30.) The first reason is that the opinion was given in a conclusory fashion on a check-box form with no supporting explanations for the limitations assessed. (Tr. 30.) Individual medical opinions are preferred over check-box reports. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983). An ALJ need not accept a medical source opinion that is conclusory and brief and unsupported by clinical findings. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001), *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992). As the ALJ points out, the opinion focuses on plaintiff's pain and physical symptoms rather than her mental health symptoms. As a mental health counselor, Mr. Campbell is not qualified to discuss plaintiff's medical issues. *See e.g., Brosnahan v. Barnhart*, 336 F.3d 671, 676 (8th Cir. 2003) (psychologist opinion properly rejected in part because it was based on consideration of physical impairments)*; Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001) (psychologist not qualified to opine regarding disability based on underlying physical conditions). Plaintiff argues Mr. Campbell's diagnosis of depression based on an inability to engage in physical tasks and her poor physical prognosis is an "explanation" sufficient to justify the marked and severe limitations assessed. However, the ALJ reasonably determined the limitations were unsupported and this is a germane reason for rejecting the opinion.

The ALJ gave some weight to the April 24, 2013 letter. (Tr. 30.) The ALJ pointed out that Mr. Campbell's opinion about plaintiff's employability is not as relevant as information about plaintiff's functional abilities. (Tr. 30.) The ALJ pointed out Mr. Campbell did not offer an opinion about plaintiff's functional abilities or limitations. (Tr. 30.) Plaintiff does not argue this opinion should have been weighed differently, and the ALJ's were reasonable and based on substantial evidence.

## CONCLUSION

The ALJ's decision is not supported by substantial evidence and free of legal error. The matter must be remanded for reconsideration of the credibility finding and the opinions of Dr. Kuhns and Ms. Kallis. On remand, the ALJ should provide legally sufficient reasons for rejecting any testimony which is found to be not fully credible and for assigning less weight to any medical opinion. The ALJ may take additional testimony as is appropriate.

**IT IS ORDERED:**

1.    Plaintiff's Motion for Summary Judgment **(ECF No. 12)** is **GRANTED.** The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. 405(g).

2.    Defendant's Motion for Summary Judgment **(ECF No. 13)** is **DENIED**.

3.    An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant. Judgment shall be entered for plaintiff and the file shall be **CLOSED**.

DATED November 24, 2015

        _s/ Fred Van Sickle_
         Fred Van Sickle
Senior United States District Judge

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 19